[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The marriage of the parties was dissolved October 4, 1982 by the court, Cohen, S.T.R. At the time of the dissolution, there was one minor child, Wahied, Jr., born May 24, 1980. Custody was awarded to the plaintiff mother. The defendant father was ordered to pay $1.00 per year alimony "and the matter of support for the minor child is left open for the Bureau of Support."
There was no further activity in the court file until April, 1998 when the Department of Social Services initiated a motion to modify the child support order. The return of service indicates that the motion was left at "the usual place of abode of the defendant" at 705 Ellis Street, Apt. 82, New Britain on May 8, 1998. On May 18, the date assigned for the hearing the Attorney General and the plaintiff appeared but the defendant defaulted. The court, Hutchinson, C.F.S.M. granted the motion. The support order was modified to $60.00 per week current support for the minor child plus $30.00 per week on the arrearage. The court also found an arrearage due to the plaintiff for past due support in the amount of $51,780.00. Immediate Income Withholding was ordered effective on notice.
Thereafter, a Department of Social Services investigator made an abode service of a notice of the order at the same address in New Britain on June 24, 1998. On October 15, 1998, the support enforcement division issued a contempt citation alleging failure to pay the support order. The citation was served abode at the same address in New Britain. The scheduled court date on this citation was January 13, 1999. On January 12, 1999 the support enforcement division received a fax from the defendant's attorney seeking a continuance because of a serious family illness. On the following day, the court, Hutchinson, C.F.S.M. found valid service of the citation and granted a continuance by agreement to January 20. There is no record of a disposition on January 20. Instead, the support enforcement division issued a new contempt citation, which was served in hand on the defendant at 24 Stoneycrest Drive, Middletown on January 29. On the court date for that citation, March 24, the defendant failed to appear and the court, Matasavage, F.S.M. found valid service and ordered that a capias mittimus issue.
The matter next came to the court on April 28, 1999 when the defendant appeared with counsel. In a colloquy[1], Attorney Alex explained his intent "to file a motion for modification of that May 18 order." The attorney stated that he was "hard pressed to understand how that arrearage could have been found". He further argued that the defendant "during that whole time period . . . had been paying support." Finally, he indicated a CT Page 16550 possible challenge to the validity of service of the motion to modify. The court, Matasavage, F.S.M. responded: "You should do a motion to reopen, not a motion to modify."
Further conversation ensued regarding a claim that there had been a previous $25.00 per week support order. It was suggested that such an order might have been entered in West Hartford prior to the divorce. No record of this claimed order has been produced[2]. Family Support Magistrate Matasavage continued the hearing to June 2 and suggested to Attorney Alex: "[Y]ou file whatever you need to file."
The defendant did not file a Motion to Reopen the Judgment until June 2, 1999. At the hearing on that date, during yet another colloquy[3], the court, Alvord, F.S.M., after observing that one of the defendant's arguments related to alleged defects in service set the matter down for special hearing on July 8 for the "motion to reopen and the motion to dismiss and the contempt." A Motion to Dismiss dated June 30, 1999 was file stamped July 7, 1999. The motion claims that the court lacked jurisdiction to enter the May 18, 1998 orders because the purported abode service of the motion on the defendant was not made at his usual place of abode.
The plaintiff, now known as Lenore Bolasevich, by her counsel objects to the motion to reopen and the motion to dismiss. The plaintiff claims that valid abode service was made of the 1998 motion to modify. She argues that the address at which service was made was a usual place of abode of the defendant or in the alternative that by his actions and omissions he should be estopped from denying it. She claims that the motion to reopen failed to include a verification under oath as required by applicable statute and practice rule, failed to state the nature of the defense, and was not filed within the applicable time limit. Finally, she argues that the motion to dismiss was not timely filed and must be denied. This court held an evidential hearing on all pending motions[4] on July 8, 1999. Both counsel filed thorough and comprehensive briefs.
 I
The plaintiff's objection regarding timeliness of the motions implicates the subject matter jurisdiction of the court to grant the motions. Accordingly, the court will address that issue first. "[O]nce the question of lack of jurisdiction of a court is CT Page 16551 raised, [it] must be disposed of no matter in what form it is presented. . . . and the court must fully resolve it before proceeding further with the case." Community Collaborative ofBridgeport Inc. v. Ganim, 241 Conn. 546, 552, 698 A.2d 245
(1997); Golden Hill Paugussett Tribe of Indians v. Southbury,231 Conn. 563, 570, 651 A.2d 1246 (1995); Pantlin ChananieDevelopment Corp. v. Hartford Cement Building Supply Co.,188 Conn. 253, 258, 449 A.2d 162 (1982); Haigh v. Haigh,50 Conn. App. 456, 460, 717 A.2d 837 (1998); see also Practice Book §25-14.
The May 18, 1998 judgment was passed on a default in that the defendant did not appear and defend. Accordingly, the motion to reopen is governed by General Statutes § 52-212 and Practice Book § 17-43 which provide a four month time period during which the judgment may be set aside[5]. It has been repeatedly held that a "trial court lacks jurisdiction to entertain a motion to open the judgment filed outside that four month period." Bufferd v.Yost, 51 Conn. App. 1, 719 A.2d 487 (1998); Ziruk v. Bedard,45 Conn. App. 137, 695 A.2d 4, cert. denied, 243 Conn. 905,701 A.2d 339 (1997); Serrano v. Behar, 15 Conn. App. 308, 311,544 A.2d 25 (1988).
However, in Wilkinson v. Boats Unlimited, Inc., 236 Conn. 78,83-84, 670 A.2d 1296 (1996) our Supreme Court held: "Although §§52-212 and 52-212a normally limit the authority to open judgments to a four month period, these statutes do not preclude the opening of a default judgment that is rendered without jurisdiction over a defendant. The prefatory words of § 52-212a
establish that the four month limitation only operates `[u]nless otherwise provided by law . . .' As a matter of law, in the absence of jurisdiction over the parties, a judgment `is void ab initio and is subject to both direct and collateral attack.'Broaca v. Broaca, 181 Conn. 463, 467, 435 A.2d 1016 (1980);Trichilo v. Trichilo, 190 Conn. 774, 777-78, 462 A.2d 1048
(1983)."
"If a court has never acquired jurisdiction over a defendant or the subject matter . . . any judgment ultimately entered is void and subject to vacation or collateral attack." Bartels v.International Commodities Corp. , 435 F. Sup. 865, 867 (D.Conn., 1977). Broaca v. Broaca, supra 181 Conn. 468. See also Centerbankv. Mauri, 18 Conn.L.Rptr. 406 (DiPentima, J., 1997); Shelto v.TZ, Inc., superior court, judicial district of Hartford, doc. no. CV96-0556211 (Freed, J., July 28, 1998) 1998 Ct. Sup. 9604, 9606; CT Page 16552Federal National Mortgage Assn. v. Osterberg, superior court, judicial district of Fairfield at Bridgeport, doc. no. 334312 (Ballen, J., February 8, 1999).
"After the expiration of the four month period provided by [Practice Book § 17-4, formerly § ] 326 a judgment may not be vacated upon the sole ground that it is erroneous in matter of law, except by a court exercising appellate or revisory jurisdiction, unless such action is authorized by statute or unless the error is one going to the jurisdiction of the court rendering the judgment. Halinick v. Collins Co., 116 Conn. 1,7-8, 163 A. 460 (1932). The court does have inherent authority, however, at any time to open and modify a judgment rendered without jurisdiction. Broaca v. Broaca, 181 Conn. 463, 467,435 A.2d 1016 (1990)." Misinonile v. Misinonile, 190 Conn. 132,134-35, 459 A.2d 518 (1983).
The court finds that the State of Connecticut as the moving party on the motion to modify failed to properly serve the citation and motion at the usual place of abode of the defendant. Furthermore, although not raised by the defendant, the motion was afflicted by several other deficiencies that render the process so devoid of procedural integrity as to have deprived the trial court of jurisdiction to render its judgment. Accordingly, the court finds that it has jurisdiction over the motion to reopen the judgment[6].
 II
It is undisputed that service of the May, 1998 motion to modify was made by a Department of Social Services investigator on May 8, 1998 by leaving the papers at apartment 82 at 705 Ellis Street in the Town of New Britain. The motion was heard on May 18. The presiding family support magistrate was clearly dubious as to the propriety of the abode service. After admitting a "postal verification" into evidence as State's exhibit A, the court asked: "Do you know where he lives? The question is directed to her [Ms. Bolasevich]?" The plaintiff responded: "That he used to live there. I'm not sure if he's living there or not. There's another address that he might be living." Transcript (hereinafter "T"), May 18, 1998, p. 2.
In the ensuing colloquy, Ms. Bolasevich revealed that the defendant had another address in Middletown "with a woman who has his other kids. . . ." After asking the plaintiff to provide the CT Page 16553 Middletown address to the state, the court went on to other aspects of the motion. Later in the hearing, the court again raised the question of service: "What I am interested in is whether this is his place of abode at this point. In order to have legal service, it has to be either handed to him or left at his place of abode." T, May 18, 1998, p. 7. The plaintiff again indicated her uncertainty, admitting, "as far as I know he was staying there in Middletown. . . ." At that point, the State offered another postal verification, this one dated October 14, 1997, which was admitted into evidence as State's Exhibit B. The State argued that this showed "some consistency" as to the defendant's address. Again the court made no finding but moved on to the question of support orders. Finally, after actually entering a support order, the court returned a final time to the issue of service: "[B]ased on two postals, I find service". T, May 18, 1998, p. 10.
Where a party seeks a postjudgment modification of custody, visitation, support or periodic alimony, such party may reestablish in personam jurisdiction over a nonappearing party by citation or summons. Practice Book § 25-26(b). A motion to modify child support in a IV-D case such as this may be served by a sheriff, deputy sheriff, constable, General Statutes § 52-50(a) or by an investigator employed by the Commissioner of Administrative Services or the Commissioner of Social Services, General Statutes § 52-50(c) or by a support enforcement officer or support services investigator, General Statutes § 52-50(d).
Service of a writ of summons "shall be made by the officer reading it and the complaint accompanying it in the hearing of the defendant or by leaving an attested copy thereof with him orat his usual place of abode." (emphasis added) General Statutes §52-54. "Fundamental tenets of due process require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses." Weil v. Miller, 185 Conn. 495, 441 A.2d 142
(1981); Kron v. Thelen, 178 Conn. 189, 193, 423 A.2d 857 (1979); see also Cugno v. Kaelin, 138 Conn. 341, 343, 84 A.2d 576 (1951);Hanson v. Denckla, 357 U.S. 235, 245, 78 S.Ct. 1228,2 L.Ed.2d 1283 (1958); Mullane v. Central Hanover Bank Trust Co.,339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); RoundhouseConstruction Corporation v. Telesco Masons Supplies Co.,168 Conn. 371, 385, 362 A.2d 778, vacated, 423 U.S. 809, 96 S.Ct. 20,46 L.Ed.2d 29. (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976); CT Page 16554City Trust Co. v. Bulkley, 151 Conn. 598, 601, 201 A.2d 196
(1964); Proctor v. Sachner, 143 Conn. 9, 17, 118 A.2d 621 (1955).
Originally under common law the defendant's physical appearance in the court was required before a judgment would enter. 1 Stephenson, Connecticut Civil Procedure (2d Ed.) § 16b, p. 54. "Emphasis has shifted to `service of process' in such a manner and under such circumstances as `to make it reasonable and just according to our traditional conception of fair play and substantial justice' that the court should proceed to judgment against the defendant." Stephenson, supra, § 16b; InternationalShoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154,90 L.Ed. 95 (1945). "Proper service of process gives a court power to render a judgment which will satisfy `due process' under the 14th amendment of the federal constitution and equivalent provisions of the Connecticut constitution and which will be entitled to recognition under the `full faith and credit' clause of the federal constitution." Stephenson, supra, § 16b; Goodrich, Conflict of Laws (4th ed., 1964), § 67.
Proper service of process is a prerequisite to a court's exercise of in personam jurisdiction over a party. Tarnopol v.Connecticut Sitting Council, 212 Conn. 157, 166, 561 A.2d 931
(1989); Board of Education of Wallingford v. Local 1282,31 Conn. App. 629, 632, 626 A.2d 1314 (1993); General MotorsAcceptance Corporation v. Pumphrey, 13 Conn. App. 223, 227,535 A.2d 396 (1988); Cohen v. Bayne, 28 Conn. Sup. 233, 237-8,257 A.2d 38 (1969); Dumont, Pleadings and Pretrial Practice, 1995 ed., 33.
"Whether a particular place is the usual place of abode of a defendant is a question of fact. Although the sheriff's return is prima facie evidence of the facts stated therein, it may be contradicted and facts may be introduced to show otherwise."Collins v. Scholz, 34 Conn. Sup. 501, 502, 373 A.2d 200 (1976);Jenkins v. Bishop Apartments, Inc., 144 Conn. 389, 390,132 A.2d 573 (1957); Cugno v. Kaelin, 138 Conn. 341, 343,84 A.2d 576 (1951); see also Clover v. Urban,108 Conn. 13, 17, 142 A. 389
(1928); Coyne v. Plume, 90 Conn. 293, 297, 97 A. 337 (1916);Palmer v. Thayer, 28 Conn. 237, 242 (1859); Grant v. Dalliber,11 Conn. 234, 238 (1836); Tucker v. Neighborhood Legal Services, Inc., 4 Conn. App. 209, 493 A.2d 278 (1985); Uyen Phan v. Delgado,41 Conn. Sup. 367, 370, 576 A.2d 603 (1990); Plonski v. Halloran,36 Conn. Sup. 335, 336, 420 A.2d 117 (1980); Genung's, Inc. v.CT Page 16555Rice, 33 Conn. Sup. 554, 558, 362 A.2d 540 (1976); Gillanders v.Dow Coming Corp. , Superior Court, judicial district of Waterbury, doc. no. BIK-CV93-0304876 (Feb. 9, 1995, Vertefeuille, J.);Shemitz v. Simmons, Superior Court, judicial district of New Haven at New Haven, doc. no. CV93-0352991 (Feb. 17, 1994,Hodgson, J.); Udolf v. Swerdloff, 8 CSCR 540 (1993); 1 Stephenson, Connecticut Civil Procedure (2d Ed.) § 22a; Joy, Connecticut Civil Officer (19th ed., 1948), 253.
Service would only be valid if it were proven that the officer made service at the correct house. Rodney v. Rodney,29 Conn. Sup. 92, 272 A.2d 315 (1970); Town of East Lyme v.Huntington, 22 Conn. Sup. 288, 169 A.2d 752 (1961); NationalIndustrial Bank of Connecticut v. Juzwic, Superior Court, Judicial District of New London at Norwich, doc. no. 94048, (Feb. 22, 1991, Axelrod, J.); Gregory v. Walton, 10 S.M.D. 1, 3 (1996).
The defendant claims that all times relevant to the motion he resided at 24 Stonycrest Road in the Town of Middletown. In the evidential hearing on July 8 there was extensive testimony on the issue of the defendant's place of abode. JoAnn DeLuca, the mother of two children by Mr. Jerjies, testified that he has resided with her and her children at the Middletown address for years. T., July 8, 1999, pp. 43-50. The defendant testified that he resided in Middletown for the last eight or nine years. He conceded that his Connecticut motor vehicle operator's license lists his address as 705 Ellis Street in New Britain. He did not refute that the New Britain address appeared on his federal income tax returns. He stated that he lived at Ellis Street with his mother about ten years ago. T, July 8, 1999, pp. 50-55.
The plaintiff and the State contend that the motion to modify, subsequent notice of judgment and contempt citation were all validly served at the defendant's abode in New Britain. A computer printout from the Department of Motor Vehicles, introduced over the defendant's objection, verifies that the New Britain address is listed on his current operator's license. The State apparently relied on the motor vehicle record and postal verification. T, July 8, 1999, pp. 8-19, 56-60; T, May 18, 1998, pp. 2-4, 7-8, 10. The plaintiff never endeavored to conceal that the defendant lived in Middletown. Rather, she consistently maintained that "he lives at both places." Compare T, May 18, 1998, p. 8 with T, July 8, 1999, p. 40.
Our law recognizes that a person may have more than one CT Page 16556 residence. Abode service may be validly made at any usual place of abode, and is not restricted to one particular abode. "One may have two or more places of residence within a State, or in two or more States, and each may be a `usual place of abode.' Service of process will be valid if made in either of the usual places of abode." Clegg v. Bishop, 105 Conn. 564, 570, 136 A. 102 (1927);Dorus v. Lyon, 92 Conn. 55, 101 A. 490 (1917).
"The habitation of a person is his abode." Capitol Light Supply Co. v. Gunning Electric Co., 24 Conn. Sup. 324, 326,190 A.2d 495 (1963); Cugno v. Kaelin, 138 Conn. 341, 343,84 A.2d 576 (1951). "The usual place of abode is usually considered to be the place where a person is living at the particular time when service is made." Grant v. Dalliber,11 Conn. 234, 238 (1836); Collins v. Scholz, supra, 34 Conn. Sup. 503; Cohen v. Bayne,28 Conn. Sup. 233, 238, 257 A.2d 38 (1969); Murach v. Laing,8 Conn.L.Rptr. 393 (1993); Deane v. Daley, 8 S.M.D. 67, 68,9 CSCR 1005 (1994); Pracukowski v. Waldron, 9 S.M.D. 61, 65 (1995);Focus Realty v. Hampford, Superior Court, judicial district of Fairfield at Bridgeport, doc. no. CV92-0298057 (Sept. 28, 1994,Maiocco, J.); Miller v. Field, 9 CSCR 494 (1994); Union Trust Co.v. Gotthilf, Superior Court, judicial district of Stamford/Norwalk, doc. no. CV89-0105126 (Feb. 4, 1994, Lewis,J.).
After evaluating the witnesses and documentary evidence the court finds that the defendant resided in Middletown at the time service was purportedly made at his abode in New Britain. The court also finds that the defendant held out 705 Ellis Street, New Britain as an address. The plaintiff, citing Capitol Light Supply Co. v. Gunning Electric Co., 24 Conn. Sup. 324, 326,190 A.2d 495 (1963) urges that this is enough to establish the New Britain address as an abode. In Capitol Light, the defendant claimed that when service was made he had moved to Syracuse, New York. The court found, however, that he had only temporarily left his parents home in Connecticut, where service was made and that there was "no showing that he intends to abandon his former home . . ." Id., 328. In contrast, in Frisco v. Frisco,13 Conn. Sup. 412 (1945), the defendant had moved away from the address where service was made a few day prior to the time of service. The court found that the prior residence was no longer the usual place of abode and dismissed the case. In the present case the court finds that the defendant moved to Middletown at least eight years prior to the service of the motion to modify. CT Page 16557
The plaintiff argues, however, that even if the defendant is found not to maintain an actual abode at the New Britain address, he should be estopped from denying validity of service because of his continued use of the address on his driver's license and tax returns. In particular, the plaintiff urges that because the defendant was required by General Statutes § 14-45 to notify the Department of Motor Vehicles of any change of address[7] that his failure to file his Middletown address should estop him from challenging service in New Britain.
This argument has been categorically rejected in three reported Superior Court cases. In Nevins v. Moretti,4 Conn.L.Rptr. 244 (Teller, J., 1991) the court stated: "The purpose of General Statutes § 14-45 is to identify drivers and facilitate communications with them. State v. Baltromitis, 5 Conn. Cir.Ct. 72, 78 (1967). The state may rely on an address provided by a licensee to be accurate when mailing information to a licensee regarding his driver's license. Id. At 76-77. The purpose of that statute is not to provide an alternative method for service of civil process." More recently, Judge Levin stated: "This court cannot now write a statute which provides that a plaintiff may serve another person at the address on file with the department of motor vehicles even though that address is not his usual place of abode." Piorkowski v. Federal Express Corp. , Superior Court, judicial district of New Haven, doc. no. 405352 (Levin, J., Feb. 6, 1998). Accord, Shircliff v. Mazzaro,16 Conn.L.Rptr. 630 (Pellegrino, J., 1996).
The plaintiff argues that in the cited cases, the failure to report the new address was an act of omission. This court is not persuaded that evidence that the defendant here deliberately maintained his prior address with licensing and tax authorities sufficiently distinguishes the present case as to require a contrary result. Nor is this service validated by Public Act No. 96-268, which inserted the present subsection (b) notwithstanding its empowering the IV-D agency to inform on persons such as Mr. Jerjies who fail to provide a correct address. If the legislature intended to create an alternative means of effecting abode service, the public act would have been the perfect instrument to accomplish the same. It did not.
 III
The parties addressed their arguments and briefs primarily on CT Page 16558 the question of the validity of the abode service. In reviewing the file, however, the court finds several other several other deficiencies, which implicate the court's in personam jurisdiction to have modified the order. These issues were not raised by the defendant. They are serious enough to merit review. "Facts showing the service of process in time, form, and manner sufficient to satisfy the requirements of mandatory statutes in that regard are essential to jurisdiction over the person." Colbyv. Colby, 33 Conn. App. 417, 420, 635 A.2d 1241 (1994); Castro v.Viera, 207 Conn. 420, 433-34, 541 A.2d 1216 (1988). Mirabal v.Mirabal, 30 Conn. App. 821, 825, 622 A.2d 1037 (1993)
Process in civil actions must be served at least twelve days before the hearing day. General Statutes § 52-46. The date assigned for the hearing on the motion to modify was May 18, 1998. The return indicates abode service was made on May 8, 1998. The process fails to comply with the time requirements of General Statutes § 52-46.
 IV
The motion to modify is file-stamped by the clerk's office at 2:08 p. m. on May 14, 1998. Process in civil actions in the Superior Court must be returned to the clerk at least six days before the return day. General Statutes § 52-46a. Late return is a substantive defect rendering the action subject to dismissal upon timely motion to dismiss. Bergin v. Estate of Bergin,3 Conn. App. 566, 490 A.2d 543, cert. denied 196 Conn. 806,494 A.2d 903 (1985). The late return of the motion to modify is in violation of the statutory mandate[8].
 V
Mesne process, which in this case is a writ of summons, "shall be signed by a commissioner of the superior court or a judge or clerk of the court to which it is returnable." Practice Book § 8-1(a). The summons is unsigned. This defect implicates jurisdiction over the person. Stewart-Brownstein v. Casey,53 Conn. App. 84, 90, ___ A.2d ___ (1999). "[A] citation, signed by competent authority, is the warrant which bestows upon the officer to whom it is given for service the power and authority to execute its command. . . . Without it, the officer would be little more than a deliveryman." Hillman v. Town of Greenwich,217 Conn. 520, 525, A.2d (1991); Village Creek Homeowners Assn.v. Public Utilities Commission, 148 Conn. 336, 339, 170 A.2d 732
CT Page 16559 (1961); Hartley v. Vitiello, 113 Conn. 74, 79, 154 A. 255 (1931).
 VI
The arrearage finding of May 18, 1998 was "subject to adjustment". It is unclear from the transcript whether Magistrate Hutchinson intended to invoke the adjustment clause of General Statutes § 46b-215[9] or contemplated a more limited adjustment for any funds the State had already recovered[10]. While portions of the colloquy may suggest a more limited purpose[11], the plaintiff as much as concedes in her brief that the adjustment clause of § 46b-215 is the "reasonably likely explanation" for the "subject to adjustment" finding.
Indeed, if the circumstances meet the criteria in the statute, it is available "on motion of any party" whether or not the judicial authority entering the judgment invoked the clause at the time. Here, the order was based on oral representations of the Assistant Attorney General that the defendant's earning capacity, T, May 18, 1998, at 7, 8, 10, 11 and evidence that the public assistance payment for the child was $59.17 or $59.83 per week. T, May 18, 1998, at 9. If there was any evidence at all of the defendant's earnings or earning capacity, it was very old at the time of the hearing. This court holds that the arrearage finding meets the criteria as being made "without information concerning past ability to pay".
The defendant nonetheless argues that the adjustment clause may not be invoked because the defendant has not explicitly availed himself of this provision. It is true that the defendant's motion to open does not implicate this provision, and in fact, its applicability was raised in oral argument by the court itself. However, nothing in the statute requires, nor has any authority been cited to require that the statute be specifically cited in the motion, or that the motion must be entitled "motion for adjustment." As has previously been noted above, although the 1998 motion was a motion to modify, the proceeding had much of the flavor of General Statutes § 46b-215. Accordingly, this court finds that the adjustment clause applies here.
 VII
The parties were requested to brief the applicability of General Statutes § 46b-232 to the present situation[12]. Again CT Page 16560 it is noted that this statute was not specifically cited by the defendant. Rather, the court itself raised the potential applicability of this section. The defendant did not address this section in his brief. The plaintiff did offer an analysis of the section. The bulk of her argument is that § 46b-232 can not be utilized to circumvent statutory provisions precluding retroactive modification. This court is not persuaded by this argument. While the authority to "alter" a judgment may indeed be limited by the retroactive modification rule, the authority to "set aside" speaks to opening the judgment, not modifying it[13]. In fact, the defendant's motion, which does not cite the statutes upon which it relies, specifically asks the court that the judgment be "reopened and set aside."
 VIII
The court holds that General Statutes §§ 52-212, 46b-215 and46b-232 as well as Practice Book § 17-43 are all applicable in this case. The court holds that the motion to modify was not served at the usual place of abode of the defendant, that the purported service was not made timely, that the return of process was late, and that the process was voidable because the summons was not signed. "Late return of process renders an action voidable rather than void." Bergin v. Estate of Bergin,3 Conn. App. 566, 569, 490 A.2d 543, cert. denied 196 Conn. 806,494 A.2d 903 (1985); 1 Stephenson, Conn. Civil Procedure (2d Ed.) 22 (b). Accordingly, the motion to reopen is granted and the modification is reopened and set aside.
 IX
The court must now address the defendant's motion to dismiss. The plaintiff has again raised jurisdictional issues, in particular that the defendant failed to comply with Practice Book § 10-30 which requires that a defendant seeking to contest the court's jurisdiction must do so within thirty days of filing an appearance[14]. The plaintiff argues that the court has no jurisdiction to dismiss the motion to modify or that the defendant has waived his claim to such relief.
The defects analyzed above provide sufficient cause for the court to dismiss the motion to modify. A claim of lack of subject matter jurisdiction can not be waived. If subject matter jurisdiction is implicated, the motion must be dismissed. Practice Book § 10-33. On the other hand, lack of jurisdiction CT Page 16561 over the person or insufficiency of service of process is waived if a motion to dismiss is not filed within thirty days of an appearance or in the proper sequence. Practice Book § 10-32.
"A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy."Figueroa v. C. S. Ball Bearing, 237 Conn. 1, 4, 675 A.2d 845
(1997). "Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." Demar v. Rocky Hill Open Space Conservation Commission, 211 Conn. 416, 425, 559 A.2d 1103
(1989); Stewart-Brownstein v. Casey, 53 Conn. App. 84, 88, ___ A.2d ___ (1999). Where the writ of summons was not signed by a commissioner of the Superior Court or the clerk of the court thus failed to comply with General Statutes § 52-45a and Practice Book § 8-1, it was nonetheless held that the defect did not deprive the court of subject matter jurisdiction, only of jurisdiction over the person, which was waived when the defendants filed appearances. "Defects in process do not deprive a court of subject matter jurisdiction." Plasil v. Tableman, 223 Conn. 68,78, 612 A.2d 763 (1992); Bridgeport v. Debek, 210 Conn. 175, 178,554 A.2d 728 (1989).
"An improperly executed writ or citation does not . . . affect the subject matter jurisdiction of the trial court. As a defect in having the court acquire personal jurisdiction over the defendant, an improperly executed [writ] may be waived by the defendant. . . . A defendant may contest the personal jurisdiction of the court `even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of filing an appearance.'" Brunswick v. InlandWetlands Commission, 222 Conn. 541, 554, 610 A.2d 1260 (1992).
"The rule specifically and unambiguously provides that any claim of lack of jurisdiction over the person as a result of an insufficiency of service of process is waived unless it is raised by a motion to dismiss filed within thirty days in the sequence required by Practice Book § 10-6, formerly § 112. Thus, thirty-one days after the filing of an appearance or the failure to adhere to the requisite sequence, a party is deemed to have submitted to the jurisdiction of the court." Pitchell v. City of Hartford, 247 Conn. 422, 433, 722 A.2d 797 (1999).
The defendant's motion to dismiss was filed more than two months after an appearance was filed by his attorney. Any claims CT Page 16562 of lack of personal jurisdiction and insufficiency of service sufficient to warrant dismissal of the motion were waived. Therefore, the motion to dismiss is denied.
 X
The resulting procedural posture of the case is a bit preternatural. On the one hand, the motion can not be dismissed because the defendant, by filing the motion too late, is deemed to have waived the defects. On the other hand, the judgment is opened because despite the late filing, the defects in process go to the personal jurisdiction, hence the default judgment can not stand[15]. The motion to modify is set down for a de novo evidential hearing as a special assignment on Thursday, March 16, 2000.
In order to expedite a full and fair hearing of this motion, the court will establish parameters for the hearing as a case management order. First, in view of this court's determination in this decision and the subsequent passage of time, both sides are precluded from any further motions raising jurisdictional issues.
Secondly, throughout the various prior hearings and in the briefs, there were references to a $25.00 per week support order having been set in the early 1980's. At various times, parties or courts have opined that this order was set by a separate support petition, or was worked out by a support enforcement officer in West Hartford, or was a pendente lite order set in a prior dissolution case that was abandoned and dismissed through dormancy or withdrawn. In one hearing, the defendant apparently expected the court to research the alleged prior order.
The defendant is correct that if there was an actual court order in a case that was not subsequently dismissed or withdrawn, that order would be determinative of the defendant's support obligation. The rule against retroactive modification would essentially preclude modification, and any arrearage computation would be constrained to be based on that order. However, if an order was entered in a proceeding that was subsequently dismissed or withdrawn, such an order at best defines the duty of support while the action was pending, or may be considered void ab initio. Similarly, if some type of voluntary process was utilized, such as an informal agreement brokered by a family relations officer[16], no court order existed and modification would remain available to the plaintiff. Finally, if an order was CT Page 16563 set by the court, but only required payment on an arrearage, as was suggested by the investigator at the initial modification hearing, then no current support order existed and the issue still remained "open" in accordance with the dissolution judgment. See T, May 18, 1998, pp. 4-6, 12-14, 17; T, April 28, 1999, pp. 5-6, 8-11; T, June 2, 1999, pp. 3-6; notes, clerk's worksheet, April 28, 1999.
The file before this court contains no record of any prior court order, and the court clerk has not discovered any other file bearing such a record. The burden of proof rests upon the defendant to produce a file, transcript or court order that establishes the existence of a prior court order, and that the same was never modified, vacated, withdrawn or dismissed. Absent such a showing, the question of support remains "open" as established by the superior court in the dissolution judgment[17].
In order to provide an appropriate evidentiary basis for the court to calculate the support arrearage, each party is ordered to file a financial affidavit reporting average weekly income for each of the years 1996, 1997 and 1998 and for any other year since the date of the dissolution of marriage during which there was a substantially different financial situation. Each party is ordered to file a copy of his or her federal income tax return, including any schedules for each of the same years. The defendant is ordered to file as exhibits copies of each credit, loan or credit card application made within the last ten years, copies of all bank statements and checking account ledgers in which he is signatory, co-signatory or which have been drawn upon for his benefit. The foregoing shall be filed with the court clerk on or before February 1, 2000 in a sealed envelope or container marked with the case caption (including case name and docket number), with copies to opposing counsel.
It is noted that the defendant has claimed at prior hearings that he has paid substantial support for the child of this marriage. The court notes that the defendant has the burden of proof on this issue. He shall file with the court and with opposing counsel on or before February 1, 2000 a sworn affidavit stating the amounts claimed to be paid, divided into yearly accounts, each of which shall indicate the dates of each payment. Copies of any documentation shall be provided and any witnesses of any such payments shall be disclosed together with a short statement as to their testimony. The originals of documentation, CT Page 16564 such as canceled checks or money order receipts shall be made available for inspection to counsel at a reasonable time and place, and shall be produced at the hearing.
Each counsel shall file with the court and with each other a list of witnesses to testify at the hearing together with a short statement of the general nature of his or her testimony and the length of such testimony, on or before February 15, 2000. After such date, no other witnesses shall be allowed except for good cause pursuant to a written motion addressed to the trial court.
All disclosure and depositions shall be completed on or before March 1, 2000. There shall be no continuance to complete or transcribe either disclosure or depositions. Any motions for enforcement of disclosure requirements, sanctions or resolution of disputes shall be filed directly with the undersigned.
The court finds prima facie evidence that a substantial arrearage is owed by the defendant. Accordingly, notwithstanding the granting of the motion to reopen the modification, the defendant is ordered to continue to comply with the existing $30.00 per week arrearage payment order until further order of the court.
Failure to comply with the above case management orders may result in sanctions imposed by the court, including, in the case of the orders regarding disclosure, the drawing of an adverse inference against the party failing to comply.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate